# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JOHN GLASE** <br> **12345 State Rd.** <br> **Cleveland, Ohio 44114** <br><br> **AND** <br><br> **ADAM FALKNER AND KRISTIN** <br> **FALKNER** <br> **7639 North Linden Lane** <br> **Parma, Ohio 44130.** <br><br> *Individually and on behalf of all* <br> *others similarly situated,* <br><br>        **Plaintiffs**, <br><br> v. <br><br> **WALMART INC.,** <br> **702 SW 8th Street** <br> **Bentonville, AR 72716.** <br><br><br>        **Defendant**. | CASE NO. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs John Glase and Adam Falkner and Kristin Falkner, individually and on behalf of the Classes defined herein of similarly situated consumers, bring this class

action suit for damages and equitable relief against Defendant Walmart, Inc. ("Defendant" or "Walmart"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves and the investigation of their counsel, and on information and belief as to all other allegations.

## INTRODUCTION

1.      Beginning in February 2025, President Trump issued a series of executive orders invoking the International Emergency Economic Powers Act,  50 U.S.C. § 1701 et seq. ("IEEPA") to impose new and significant tariffs ("subject tariffs") on imports from nearly every foreign country, including those from which Walmart sources products.

2.      This class action arises from Walmart's retention of windfall profits generated by the unlawful tariffs imposed by the Trump Administration under the IEEPA. This windfall is a direct result of Walmart systematically passing on a percentage of the costs of IEEPA tariffs to its own customers. Indeed, Walmart has been projcted to be in line to receive as much (if not more) than $10 Billion back in tariff refunds.[1]

3.      Following the imposition of the subject tariffs, Walmart publicly stated that it would implement price increases across its product lines to manage the financial impact of the subject tariffs. Walmart's Chief Financial Officer, John David Rainey, stated that "We're wired for everyday low prices, but the magnitude of these increases is more than any retailer can absorb"[2] And during its May 15, 2025 earnings call Walmart stated that "The higher tariffs will result in higher prices."[3] Consistent with these statements, retail prices for Walmart products increased in the United States as a result of the tariffs. Plaintiffs and the Class purchased Walmart products after these price increases took effect and, as a result, paid higher prices reflecting these tariff-related adjustments ("tariff surcharges").

---

[1] https://finance.yahoo.com/economy/policy/articles/tariff-refunds-now-available-going-164128866.html;
https://www.cnbc.com/2026/04/20/tariff-refunds-begin-on-monday-these-retailers-are-due-big-paydays.html.
[2] https://www.cnbc.com/2025/07/17/trump-tariffs-affect-walmart-prices.html
[3] https://finance.yahoo.com/news/walmart-ceo-harsh-warning-customers-150700973.html

4.      This particular dispute stems from Walmart's statements and actions around a structural inequity in the tariff refund process. While the importer of record is the only party that may recover a refund from the government for an improperly assessed tariff, the importer is often nothing more than a pass-through vehicle. Frequently, the importer simply fronts the cost of the tariff, and recovers a percentage of the cost by imposing higher prices on consumers. The consumer, for all intents and purposes, pays a percentage of the tariff.

5.      On February 20, 2026, the Supreme Court held that the subject tariffs were unlawful. *Learning Res., Inc. v. Trump*, 607 U.S. ___, Nos. 24-1287, 25-250, 2026 WL 477534, at *13–14 (U.S. Feb. 20, 2026). And yet, even when the Supreme Court strikes down an unlawful tariff, the truly injured parties possess no direct avenue for redress. American consumers who bore part of the economic burden of these tariffs possess no statutory cause of action in the Court of International Trade ("CIT") — only the importer of record has standing to seek a refund, regardless of who ultimately paid. Large corporations, even if they were to pass on 100 percent of the tariff burden onto customers, remain fully empowered to recover a complete refund for any unlawful tariffs they paid.

6.      This is no hypothetical. Over 2000 companies have filed lawsuits in the CIT, actively seeking refunds for every cent of their IEEPA tariff bill and the CIT has recently announced an administrative procedure to refund the unlawful tariffs without the need to file a lawsuit and Walmart has not made any proposal to return to customers the amount of these tariffs that were previously recovered thru price increases. This despite estimates from Goldman Sachs that U.S. consumers are "shouldering two-thirds of President Trump's new tariff costs."[4] Though Walmart has not – yet – instituted its own action in the CIT seeking refund of its IEEPA tariff bill, it has also, to date, retained the tariff surcharges for its own benefit, and has intentionally refused public comment promising that it would refund its customers those tariff surcharges.

---

[4] Nick Lichtenberg, Goldman Sachs doubles down on tariff research that infuriated Trump, saying average Americans will bear two-thirds of the costs, FORTUNE (Aug. 13, 2025), https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/.

7.      This lawsuit seeks to prevent Walmart, the largest retailer in the world by revenue[5], from inequitable recovery. On May 17, 2025, President Trump warned that ""Walmart should stop trying to blame tariffs as the reason for raising prices throughout the chain. Walmart made BILLIONS OF DOLLARS last year, far more than expected. Between Walmart and China they should, as is said, 'EAT THE TARIFFS,' and not charge valued customers ANYTHING. I'll be watching, and so will your customers!"[6] Walmart, to date, has made no commitment to return any portion of anticipated tariff refunds to the consumers who bore those costs. Instead, Walmart actually acknowledged the opposite. Walmart's Chief Financial Officer, John David Rainey, stated in the Company's fourth-quarter earnings call that inflation for general merchandise — or the prices it charges consumers for products like electronics and appliances — rose more than 3%, up from 1.7% between July and September. Most of those products are imported from overseas and are subject to Mr. Trump's tariffs, and that "[T]ariff-related costs lifted prices across many categories."[7] Walmart makes no commitment to compensate its customers who paid elevated prices during the Class Period, leaving Walmart the sole benefactor of the illegal tariff windfall. Walmart's simultaneous recoupment of tariff costs from consumers through elevated pricing and from the government through court-ordered tariff refunds constitutes unjust enrichment at the expense of the Class.

8.      Therefore, Plaintiffs seek a judgment that Walmart is obligated to return to Plaintiffs and proposed Class Members all IEEPA duties passed on to customers in the form of higher prices on products, with interest.

9.      Plaintiffs and the Classes are entitled to restitution of the tariff overcharges they paid, or a proportionate share of any tariff refunds Walmart recovers, together with interest, reasonable attorneys' fees, and costs.

**PLAINTIFFS**

---

[5] https://nrf.com/research-insights/top-retailers/top-100-retailers/top-100-retailers-2025-list
[6] https://time.com/7285637/walmart-raising-prices-us-tariffs-consumer-impact/
[7] https://www.cbsnews.com/news/walmart-trump-tariffs-general-merchandise-inflation/

10.	Plaintiffs John Glase is a resident of this District, residing at 12345 State Rd., Cleveland, Ohio 44114.

11.	Plaintiff Adam Falkner and Kristin Falkner, husband and wife, are residents of this District, residing at 7639 North Linden Lane, Parma, Ohio 44130.

12.	Mr. Glase is a Walmart customer. Within the Class Period, Mr. Glase purchased from Walmart electronics, food products, household items, and health and hygiene products imported from countries subject to IEEPA tariffs, at prices inflated by Walmart's pass-through of IEEPA tariff costs.

13.	Mr. Falkner and Ms. Falkner are Walmart customers. Within the Class Period, the Falkners purchased from Walmart electronics, food products, household items, small appliances, and health and hygiene products imported from countries subject to IEEPA tariffs, at prices inflated by Walmart's pass-through of IEEPA tariff costs.

## DEFENDANT

14.	Defendant Walmart Inc. ("Walmart") is a Delaware corporation, publicly traded under the NYSE ticker symbol "WMT," with its principal place of business at 702 SW 8th Street, Bentonville, AR 72716.

## JURISDICTION AND VENUE

15.	This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Walmart.

16.	This Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Walmart's obligation to return to the consumers who paid them the IEEPA tariff surcharges, as well as any IEEPA refunds Walmart recovers from the United States

17.     This Court has personal jurisdiction over Walmart because it conducts continuous and systematic business in the state of Ohio, ships goods to and from Ohio on a daily basis, maintains operational facilities and employees in Ohio, and collected the unlawful IEEPA tariff surcharges from Plaintiffs and proposed Class members within this District.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Messrs. Glase and Falkner and Ms. Falkner reside in this District, and a substantial portion of the events giving rise to this action occurred in this District, including Plaintiffs' purchases of tariffed goods at a Walmart retail store in Ohio.

## NATURE OF THE ACTION AND FACTUAL BACKGROUND

### A.  *The IEEPA Tariffs and Their Invalidation*

19.     Beginning in February 2025, the President issued a series of executive orders invoking IEEPA to impose new tariffs on goods imported from nearly every foreign country. These included tariffs of 25% on imports from Canada and Mexico (Exec. Orders 14193[8] & 14194[9]), escalating tariffs on imports from China reaching as high as 145% (Exec. Orders 14195[10], 14228[11], 14259[12], and 14266[13]), and a baseline 10% tariff on nearly all other imports under the "reciprocal tariff" order of April 2, 2025 (Exec. Order 14257[14]), with higher country-specific rates ranging from 11% to 50% on 57 countries.

20.     On February 20, 2026, the Supreme Court invalidated all IEEPA-based tariffs in a

---

[8] Exec. Order No. 14193, Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 7, 2025).

[9] Exec. Order No. 14194, Imposing Duties To Address the Situation at Our Southern Border, 90 Fed. Reg. 9,117 (Feb. 7, 2025).

[10] Exec. Order No. 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[11] Exec. Order No. 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[12] Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China, 90 Fed. Reg. 15509 (Apr. 14, 2025)

[13] Exec. Order No. 14266, Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).

[14] Exec. Order No. 14257, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

6-3 decision. The Court stated: "We hold that IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026) (slip op. at 20).

21.     CBP announced on February 22, 2026 that IEEPA duty collection would cease effective February 24, 2026.

**B.      *Walmart's Business Model***

22.     Walmart, the world's largest retailer by revenue, operates a chain of retail stores and a robust e-commerce platform that serves hundreds of millions of customers globally. Walmart sells an enormous quantity and variety of goods, including groceries, appliances, tires, toys, hardware, sporting goods, cameras, books, housewares, apparel, health and beauty aids, furniture, and office equipment.

23.     In fiscal year 2025, Walmart enjoyed net revenues exceeding $680 billion, reflecting its dominant position in the global retail market.

24.     Walmart's core value proposition is defined by the purpose "to save people money so they can live better," centered on providing consumers with "Everyday Low Prices" ("EDLP") — a commitment it uses to attract and retain customers across all market segments. Walmart's pricing model is central to its brand identity, and consumers reasonably rely on Walmart's public pricing representations in their purchasing decisions.

**C. *Walmart's Response to the IEEPA Tariffs***

25.     Walmart is one of the largest importers of consumer goods into the United States, regularly appearing among the top ten U.S. importers by volume.[15] A substantial portion of Walmart's U.S. merchandise — including electronics, apparel, home goods, and consumables — is sourced from countries subject to IEEPA tariffs, including China, India, and Mexico.

---

[15] https://www.joc.com/article/top-100-importerexporter-rankings-largest-us-shippers-outpace-hot-market-6000608.

26.     Goods from China alone account for a significant percentage of Walmart's U.S. merchandise sales. Walmart also imports heavily from India and Mexico, both of which were subject to substantial IEEPA tariffs.

27.     Although they may be nominally directed extraterritorially, the increased costs created by the subject tariffs are borne almost entirely by U.S. importers and consumers.[16] Researchers studying recent tariffs estimate that approximately 96% of the tariff cost burden is passed through to American consumers.[17]

28.     While importers must pay the subject tariffs at the border, wholesalers, manufacturers, and retailers all face a choice: whether to absorb the burden of the subject tariffs or to pass that burden on to their customers.[18] In most cases, including in the case of Walmart, part of the burden of tariffs is eventually passed through to U.S. consumers through retail price increases.[19]

29.     Throughout the Class Period, Walmart paid IEEPA tariffs to CBP. Walmart, like most U.S. firms, passed part of the tariff burden onto consumers through elevated retail pricing. Walmart's gross margin data during the tariff period reflects its ability to sustain and expand margins while consumers bore increased costs.

30.     Walmart was able to increase the price of tariffed goods during the peak of the IEEPA tariff regime by selectively raising prices on tariffed goods. The higher prices consumers paid were a consequence of Walmart's increased cost of importation. Absent the imposition of the unlawful IEEPA tariffs, Walmart would not have needed to raise prices on consumers in this way.

31.     In 2025, Walmart's CFO John David Rainey stated that while Walmart was working diligently to "minimize" tariff impacts and would seek to "absorb" some cost

---

[16] Julian Hinz, et al., America's Own Goal: Who Pays the Tariffs?, Kiel Inst. for the World Econ. (Jan. 19, 2026), https://www.kielinstitut.de/fileadmin/Dateiverwaltung/IfW-Publications/fis-import/92fb3f30-07b8-4dcf-b2bcfbefb831f1a1-KPB201_EN.pdf .
[17] Id.
[18] Id. at 7.
[19] Id.

increases where possible rather than pass them to consumers, he admitted that being "wired for everyday low prices" has its limits.[20]

32.     Walmart demonstrably raised prices on numerous tariff-affected product categories throughout the Class Period. Walmart's CFO later acknowledged on an earnings call that "some price increases" were necessary on imported goods affected by tariffs, conceding that certain categories saw meaningful consumer-facing price increases.

33.     Walmart's price increases have been corroborated by first-hand accounts from Walmart shoppers across Ohio and other states. Upon information and belief, consumers reported seeing price hikes of 20 to 30 percent or more on affected items, including electronics, apparel, and household goods, despite Walmart's public representations about its commitment to low pricing.

34.     Subsequent to the Supreme Court's landmark decision invalidating tariffs imposed under the IEEPA, the U.S. Court of International Trade (CIT) ordered U.S. Customs and Border Protection (CBP) to remove IEEPA duties from all affected entries. In an order issued March 4, 2026, in *Atmus Filtration, Inc. v. United States* (Ct. No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.)[21], the CIT directed CBP to liquidate all unliquidated entries without IEEPA duties and to reliquidate any entries not "finally liquidated" without IEEPA duties. Under the *Atmus* Order, Walmart is entitled to a refund of the IEEP tariffs ("All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision.").

35.     According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at 6. Walmart, as one of the country's largest importers, is entitled to approximately $10.2 Billion dollars in refunds.

---

[20] https://finance.yahoo.com/news/walmart-cfo-warns-affordability-crisis-is-getting-worse-181210420.html.
[21] https://storage.courtlistener.com/recap/gov.uscourts.cit.19346/gov.uscourts.cit.19346.21.0.pdf.

36. Walmart is poised to be paid twice for the same unlawful tariff burden: once by its customers (through elevated prices) and once by the U.S. government (through tariff refunds).

37. At least one leading economic expert, Stephanie Roth of Wolfe Research, as acutely noted that "Companies are highly unlikely to start trimming their prices as a result," Roth said. "Walmart is not going to give you a check for the 15% tariff on sneakers you bought from them four months ago."[22]

38. As a direct result of Walmart's tariff pass-through pricing, Class Members paid more for tariffed goods than they would have paid absent the unlawful IEEPA tariffs.

## CLASS ACTION ALLEGATIONS

39. Plaintiffs brings this action on behalf of themselves, individually, and on behalf of all others similarly situated (the "Nationwide Class") as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4).

40. The Nationwide Class is initially defined as follows:

**All persons who purchased, from any Walmart retail channel, any good subject to the tariffs imposed under IEEPA, during the period February 1, 2025 through February 24, 2026.**

41. Additionally, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4), Plaintiffs bring this action on behalf of the following Ohio Class initially defined as:

**All persons in the state of Ohio who purchased, from any Walmart retail channel, any good subject to the tariffs imposed under IEEPA, during the period February 1, 2025 through February 24, 2026.**

42. The Nationwide Class and the Ohio Class are referred to herein as "Class," unless otherwise stated.

43. Excluded from the Class are: (a) Defendant; (b) subsidiaries and affiliates of Defendant; (c) any person or entity who is an officer, director, employee, or controlling

---

[22] https://www.cnn.com/2026/02/20/business/tariff-prices-supreme-court-ruling.

person of Defendant; (d) any entity in which Defendant has a controlling interest; (e) the legal representatives, heirs, successors, and assigns of any excluded party; and (f) any judicial officer presiding over this action, the members of his or her immediate family and staff, and any juror assigned to this action.

44.     The Class Period is February 1, 2025,thru February 24, 2026. Plaintiff reserves the right to amend or modify the class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues. As described below, the Class satisfies the elements of Fed. R. Civ. P. 23(a) and Rule 23(b).

45.     *Numerosity*. The Members of the Class are so numerous that joinder of all Members is impracticable. As of January 31, 2026 Walmart operates approximately 5,212 total U.S. retail units, nationally, and approximately 146 retail units in Ohio, making Ohio the 6th most-stocked state in the country, behind Texas, Florida, California, North Carolina, and Georgia. That count covers Walmart-branded locations (Supercenters, discount stores, and Neighborhood Markets), and Ohio also has a number of Sam's Club locations on top of that, which serve millions of customers. Walmart sells millions of products each month, and upon information and belief, there are several millions of people in the proposed Class.

46.     *Typicality*. Plaintiff's claims are typical of the claims of the Members of the Class. Throughout the Class Period, both Mr. Glase and Mr. Falkner purchased from Walmart electronics, food products, household items, small appliances, and health and hygiene products imported from countries subject to IEEPA tariffs, at prices inflated by Walmart's pass-through of IEEPA tariff costs. Plaintiffs' claims are also typical of the other Class Members in that Plaintiffs have been damaged as a result of paying an unfairly elevated price to Walmart.

47.     *Adequacy*. Plaintiffs will fairly and adequately protect the interests of the putative Class and have retained counsel competent and experienced in class action litigation. Plaintiffs are committed to the vigorous prosecution of this action and has no interests that are adverse or antagonistic to the Class.

48.     *Superiority*. A class action is superior to any other available means for the fair and efficient adjudication of the Classes' claims. The damages suffered by certain individual Members of the Class are relatively small compared to the burden of individual prosecution of the complex litigation required to recover from Walmart. It would be impractical for most, if not all, Class Members to seek relief on an individual basis. Furthermore, individual litigation could result in thousands of individual lawsuits, introducing the risk of inconsistent judgments and increasing the delay and expense to all parties. In contrast, a class action would present far fewer administrative difficulties. The Members of the Class are ascertainable through methods typical of class action practice and procedure, including through Walmart's own transactional records.

49.     ***Predominance of Common Questions of Law and Fact***. Numerous questions of law and fact are common to Plaintiffs and all Members of the Class. These common questions will result in common answers for all Class Members that will impact the resolution of the claims on grounds equally applicable to all Class Members. These common questions, which predominate over any questions affecting only individual Class Members, include, but are not limited to:

    A.  Whether a portion of the higher prices that consumers paid for Walmart's products are attributable to the cost of IEEPA tariffs;

    B.  Whether Walmart is obligated to return IEEPA duties to the consumers who paid them in the form of higher prices;

    C.  Whether Walmart's retention of elevated consumer payments constitutes unjust enrichment;

    D.  Whether Walmart acted unfairly or deceptively by up-charging consumers in response to tariff-related costs while failing to reimburse consumers upon learning the tariffs were illegal;

    E.  Whether Walmart's conduct constitutes an unfair practice under the consumer statutes;

F. Whether Walmart's failure to disclose its pending CIT lawsuit to customers at the point of sale or otherwise constitutes a material omission or misrepresentation under the consumer statutes;

G. Whether Walmart's conduct has harmed Plaintiff and the Class uniformly;

H. The measure of damages available to Plaintiff and the Class due to increased prices caused by Walmart's tariff pass-through; and

I. Whether restitution is the appropriate measure of relief, and if so, the appropriate amount.

50.    ***Rule 23(b)(2) Class Certification***. Walmart has acted in a manner that applies generally to the proposed Class, making both declaratory and injunctive relief appropriate with respect to the proposed Class as a whole. Walmart's decision to raise prices on goods subject to IEEPA duties, and then seek a blanket refund from the government without committing to establish any customer refund mechanism, warrants class-wide declaratory and injunctive relief.

## <u>COUNT I</u>

***<u>Violation of the Ohio Consumer Sales Practices Act ("OCSPA") (R.C. 1345, et. set.)</u>***
*(On Behalf of Plaintiff and the Ohio Class Only)*

51.    Plaintiffs incorporate the foregoing allegations in this complaint as if fully set forth herein.

52.    The Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01 et seq., prohibits suppliers from committing unfair or deceptive consumer sales practices in connection with a consumer transaction.

53.    Plaintiffs and each Class Members are Member is a "consumer" within the meaning of R.C. § 1345.01(D), having purchased goods from Walmart for personal, family, or household purposes.

54.    Walmart is a "supplier" within the meaning of R.C. § 1345.01(C), regularly engaged in the business of selling consumer goods to Ohio residents.

55.     Plaintiffs, the Class Members and Walmart engaged in a "Consumer Transaction" as that term is defined under the OCSPA. Each purchase of tariffed goods by an Ohio Class Member from any Walmart retail channel during the Class Period constitutes a "consumer transaction" within the meaning of R.C. § 1345.01(A).

56.     The OCSPA prohibits a supplier from committing an unfair or deceptive act or practice in connection with a consumer transaction, whether it occurs before, during, or after the transaction.  That "after the transaction" language is critical — it expressly reaches post-sale conduct such as a refusal to process a refund for an improper charge. The supplier's retention of money it was not entitled to collect is itself the unfair and deceptive act.

57.     R.C. §1345.03(B)(7) specifically enumerates as an unconscionable factor "whether the supplier has, without justification, refused to make a refund in cash or by check for a returned item that was purchased with cash or by check, unless the supplier had conspicuously posted in the establishment at the time of the sale a sign stating the supplier's refund policy." This provision is directly on point where a supplier collected a charge it was not entitled to and then refused to return it. The "without justification" standard is easily met when the charge itself was improper from inception — there is no legitimate basis to retain it.

58.     Upon information and belief, Walmart has never posted  a refund policy placing Walmart's customers on notice that the customers would not be entitled to a refund of the inflated consumer product prices related to the IEEPA tariffs, in the event Walmart received a refund for the unconstitutional tariffs.

59.     Ohio R.C. 1345.03(A) makes Walmart's knowing retention of and refusal to refund its customers, the excess mounts they paid under the illegal IEEPA tariff regime, but refunded to Walmart by the U.S. Government, unconscionable as a atter of law.

60.     Ohio Courts have held that substantially similar conduct by a supplier for its failure to provide refunds owed to consumers constitutes a deceptive act under the CSPA.

See, e.g., *State ex rel. Ohio AG v. Foster*, 2013 Ohio Misc. LEXIS 10762 (2013), *State v. Stephens Inv. & Fin. Servs.*, 2011 Ohio Misc. LEXIS 17160 (2011).

61. The OCSPA is a remedial statute designed to protect consumers and is to be liberally construed in their favor. *Price v. Evans Auto. Repair, Inc.*, 2024-Ohio-5108 (2024); *Einhorn v. Ford Motor Co.*, 48 Ohio St. 3d 27 (1990). Walmart's retention of funds that rightfully belong to Plaintiffs and the consumer Class Members undermines the fairness and transparency that the OCSPA seeks to ensure in consumer transactions.

62. Walmart's unfair and deceptive practices were willful, as Walmart possessed actual knowledge that it was raising consumer prices in response to tariff costs while simultaneously pursuing government refunds for those same costs, and affirmatively chose not to disclose this dual recovery strategy to its customers.

63. Plaintiffs and the Class Members were damaged as a proximate result of Walmart's unfair and deceptive practices, in an amount equal to the tariff cost component embedded in the prices they paid.

64. By engaging in the foregoing conduct, Walmart has engaged in unfair competition or unfair or deceptive acts in violation of Ohio Rev. Code Ann. §§ 1345.01 et seq. (Ohio Consumer Sales Practices Act), with respect to Class Members' Walmart purchases made in Ohio and/or Walmart purchases by Ohio residents.

65. Pursuant to R.C. § 1345.09, Plaintiffs and Ohio Class Members are entitled to:

a. Rescission of the consumer transactions and a full refund of the tariff cost components paid, or, in the alternative, actual economic damages in an amount to be determined at trial;

b. Because Walmart's violations were willful within the meaning of R.C. § 1345.09(B), noneconomic damages of not more than $5,000 per violation;

c. An injunction, pursuant to R.C. § 1345.09(D), prohibiting Walmart from engaging in the deceptive and unfair acts and practices described herein;

d. Reasonable attorneys' fees pursuant to R.C. § 1345.09(F)(2); and

e.    Such other relief as the Court deems appropriate.

66.    Plaintiffs and the Class Members are entitled to actual damages, injunctive relief, attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT II

### *Quasi Contract / Unjust Enrichment*

*(On Behalf of Plaintiff and the Class)*

67.    Plaintiffs incorporate the foregoing allegations in this complaint as if fully set forth herein.

68.    As described herein, Defendant charged Plaintiffs and each member of the

proposed class tariff surcharges when they purchased Defendant's products. By collecting these tariff surcharges, Defendant received and knowingly and willingly accepted a direct benefit at Plaintiffs and the members of the proposed Class's expense. The Supreme Court has determined that the tariffs were unlawful and the Class conferred a benefit upon Walmart in the form of the inflated prices they paid on a wide array of goods subject to the IEEPA tariffs. These inflated prices were caused by Walmart's attempt to pass on part of the costs of the IEEPA tariffs.

69.    It would be unjust for Defendant to retain tariff surcharges to cover the expense of the subject tariffs when Defendant is entitled to a refund for the subject tariffs paid.

70.    Defendant's unjust conduct was the proximate cause, and a substantial factor, in causing Plaintiffs and the members of the proposed Class's losses and damages

71.    Under the circumstances detailed in this Complaint, equity requires that Walmart pay and return to Plaintiffs and the Class any IEEPA tariff costs passed through to customers, the amount of which will be proven at trial.

## COUNT III

### *Money Had and Received*

*(On Behalf of Plaintiff and the Class)*

72.     Plaintiffs incorporate the foregoing allegations in this complaint as if fully set forth herein.

73.     Walmart received money from Plaintiffs and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

74.     Walmart received this money for the purpose of repaying itself part of the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on imported goods.

75.     The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization and were unlawful.

76.     The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiffs and to each Member of the proposed Class.

77.     Defendant has not returned the money.

78.     In equity and good conscience, Walmart should not be permitted to retain the funds consumers paid above and beyond what they would have absent the IEEPA tariffs. The money belongs to Plaintiffs and the Class, and Walmart is obligated to return it. This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Walmart's retention of consumer overcharges already collected, this Count more particularly addresses Walmart's receipt and/or anticipated retention of government refund proceeds that, in equity, represent a return of money that was economically borne by Members of the Classes, not by Walmart.

## COUNT IV

### *Injunctive Relief Under Federal Rule Of Civil Procedure 23(b)(2)*
*(On Behalf of Plaintiff and the Class)*

79.     Plaintiffs incorporate the foregoing allegations in this complaint as if fully set forth herein.

80.     Federal Rule of Civil Procedure 23(b)(2) permits class certification where the party opposing the class has acted or refused to act on grounds that apply generally to the class,

so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

81.    Walmart has acted and continues to act on grounds generally applicable to the Class. Specifically, Walmart has: (a) uniformly passed through a portion of the IEEPA tariff costs to all customers purchasing tariffed goods; (b) uniformly failed to establish any customer refund mechanism for the tariff costs it passed on; and (c) has failed to commit to returning to its customers any tariff refunds it is entitled to receive rather than retaining those tariffs to benefit only Walmart.

82.    Absent injunctive relief, Walmart will retain all ill-gotten increased profits from unlawful tariffs and/or government tariff refunds — which may exceed one billion dollars — without compensating the consumers who actually bore a substantial portion of the economic burden of those tariffs. This harm is imminent, as the Court of International Trade has already issued a refund order and refund payments are anticipated imminently. See *Atmus, supra.*

83.    Plaintiffs and the Class will suffer irreparable harm absent injunctive relief. Monetary damages alone may be inadequate to remedy the harm because: (a) the refund proceeds may be commingled with general corporate assets making tracing difficult or impossible; (b) future price reductions, as vaguely promised by Walmart, do not constitute adequate legal relief for past economic injuries; and (c) the diffuse nature of the harm across millions of consumers creates practical barriers to full monetary recovery.

84.    Plaintiffs therefore request that the Court, pursuant to Federal Rule of Civil Procedure 23(b)(2), enter injunctive relief:

   a. Enjoining Walmart from retaining, disbursing, or otherwise dissipating any IEEPA tariff refunds received from the U.S. government, pending resolution of this litigation;

b. Requiring Walmart to establish and maintain an identifiable, segregated account, i.e. constructive trust, to hold all IEEPA tariff refunds received from the U.S. government pending further order of this Court;

c. Requiring Walmart to disclose to this Court and to Class Members the total amount of IEEPA tariff refunds it has received or anticipates receiving from the U.S. government; and

d. Requiring Walmart to establish a fair and equitable refund mechanism through which affected Class Members may recover the tariff cost component of the inflated prices they paid during the Class Period.

85. The proposed injunctive relief is appropriate respecting the Class as a whole because Walmart's conduct and the requested relief apply uniformly and without differentiation to all Class Members.

## **PRAYER FOR RELIEF**

Plaintiffs request that the Court provide the following relief:

86. Determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23 and direct that notice of this action be given to Members of the Class;

87. Enter an Order declaring that Walmart's actions violate the Ohio Consumer Sales Practices Act and/or equitable principles underlying the Ohio claims under the Ohio Consumer Sales Practices Act;

88. Award Plaintiffs and the Class damages or restitution in the amount to be determined at trial that Walmart was unjustly enriched by the tariff-cost component of prices charged to Class Members;

89. Award Plaintiffs and the Ohio Class actual damages, and such other statutory relief as is available, pursuant to the Ohio Consumer Sales Practices Act, in an amount to be determined at trial;

90.     Enter a declaration that Walmart is obligated to return to Plaintiff and proposed Class Members all IEEPA duties passed on to customers in the form of higher prices on products, with interest;

91.     Enter injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) as described in Count IV, including enjoining Walmart from retaining government tariff refunds pending resolution of this litigation and requiring Walmart to establish a consumer refund mechanism;

92.     Enter injunctive relief pursuant to the Ohio Consumer Sales Practices Act, R.C. § 1345.09(D), prohibiting Walmart from continuing to engage in the deceptive and unfair acts and practices described herein with respect to Ohio consumers;

93.     Award Plaintiff and Ohio Class Members rescission, actual damages, and non-economic damages pursuant to R.C. § 1345.09, including attorneys' fees;

94.     Award prejudgment and post-judgment interest;

95.     Award Plaintiff reasonable attorneys' fees and costs; and

96.     Grant such other equitable relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Thomas J. Connick*
Thomas J. Connick (0070527)
Theodore M. Dunn, Jr. (0024195)
Kevin Kozak (0102539)
**SCHNEIDER BELL LLP**
1375 E. Ninth Street Suite 900
Cleveland, OH  44114
216-696-4200/ 216-696-7303 F
tconnick@sssb-law.com
tdunn@mysblaw.com

/s/ Edward A. Proctor

Edward A. Proctor (0069877)
Mills, Mills, Fiely and Lucas, LLC
101 Canton Central Plaza, Suite 1200
Canton, OH 44702
330-456-0506
eproctor@mmfllaw.com


/s/ Edward W. Cochran

Edward W. Cochran (0070527)
20030 Marchmont Rd.
Shaker Heights, OH  44122
PH: 216-577-4545
edward@edwcochran.com

*Attorneys for Plaintiff and the Putative Class
Members*